ALFRED JOHN LOWE, Employee, Plaintiff-Appellee v. BE&K CONSTRUCTION COMPANY, Employer, Defendant-Appellant, and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Carrier, Defendant-Appellant

No. COA95-594

(Filed 20 February 1996)

**1. Workers' Compensation § 165 (NCI4th)— back injury while tightening flange—accident—relation of spine condition to injury—disability—sufficiency of evidence**

The evidence was sufficient to support the Industrial Commission's findings of fact which in turn supported its conclusion that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant when he strained to tighten a flange and experienced the sudden onset of severe low back pain, that his cervical spine condition was related to his injury, and that he was disabled.

**Am Jur 2d, Workers' Compensation §§ 246-250.**

LOWE v. BE&K CONSTRUCTION CO.

[121 N.C. App. 570 (1996)]

**2. Workers' Compensation § 291 (NCI4th)— credit for sick leave payments—failure to award—error**

The Industrial Commission erred in not awarding defendants a credit of $20,139.00 under N.C.G.S. § 97-42 for sick leave payments made to plaintiff.

**Am Jur 2d, Workers' Compensation § 416.**

**Workmen's compensation: crediting employer or insurance carrier with earnings of employee re-employed, or continued in employment, after injury. 84 ALR2d 1108.**

Appeal by defendants from Opinion and Award entered 2 February 1995 by the North Carolina Industrial Commission, Thomas J. Bolch, Commissioner. Heard in the Court of Appeals 26 January 1996.

*Gene Collinson Smith for plaintiff-appellee.*

*Maupin Taylor Ellis & Adams, P.A., by Winston L. Page, Jr., and M. Reid Acree, Jr., for defendants-appellants.*

WYNN, Judge.

Defendant-appellants, BE&K Construction Company ("BE&K") and St. Paul Fire & Marine Insurance Company ("St. Paul"), appeal the North Carolina Industrial Commission's (Commission's) Opinion and Award concluding that: (1) plaintiff-appellee, Alfred J. Lowe, sustained a compensable injury by accident arising out of and in the course of his employment with BE&K, (2) plaintiff's cervical back condition and other conditions of the back were causally related to the accident, (3) plaintiff is disabled, and (4) defendants cannot take a benefit credit for sick leave previously paid to plaintiff under N.C. Gen. Stat. § 97-42 (1991). We affirm in part and reverse in part.

The record on appeal indicates that BE&K employed Mr. Lowe for approximately ten years. He worked as a piping superintendent which involved supervising the replacement of pipes and solving any problems which arose during his shift.

At the end of his shift on 5 November 1990, Mr. Lowe noticed a water leak in the flange. He and his co-worker, Tommy Scarborough, began tightening the flange with double wrenches. As they pulled on the flange for approximately 20 to 30 minutes, Mr. Lowe suddenly experienced a sharp pain in his lower back. He told Mr. Scarborough that he "pulled something" and that "[h]e heard something pop into

LOWE v. BE&K CONSTRUCTION CO.

[121 N.C. App. 570 (1996)]

his neck and back." Thereafter, he reported the injury to his supervisor, Mr. Harvey Brooks. The following day, he was late for work because of leg and back pain.

Mr. Lowe experienced leg and back pain until June 1991. He continued to work at BE&K delegating all the physical work to other employees. Mr. Lowe believed that the pain would eventually subside; however, the pain worsened and he sought medical treatment on 13 June 1991. From 13 June 1991 to 28 May 1993, he received medical treatment from several back and spinal injury specialists.

Because of this injury, Mr. Lowe was unable to work from 11 June 1991 through approximately 9 November 1991. During that time, he received sick leave compensation from BE&K. BE&K paid him his full salary until 11 September 1991 and then paid him 60% of his salary until 9 November 1991. Consequently, Mr. Lowe received approximately $20,139.00 during his absence. After he returned to work at BE&K, he received his regular salary until approximately 31 January 1992 when he was laid off. Mr. Lowe continued to be unable to perform his regular work duties due to back and leg pain; however, defendants did not pay him further sick leave or other compensation for his disability.

Mr. Lowe filed a complaint alleging that he should be compensated by defendants for his back injury. On 2 August 1994, Deputy Commissioner Morgan S. Chapman issued an Opinion and Award which found that Mr. Lowe sustained an injury by accident arising out of and in the course of his employment with BE&K and that he materially aggravated his pre-existing back condition. On 2 February 1995, the Full Commission filed an Opinion and Award affirming the Deputy Commissioner's decision and concluding that BE&K and St. Paul must provide Mr. Lowe with all medical treatment (including cervical spine treatment) to the extent that it tends to effect a cure, gives relief or lessens his disability. The Full Commission, however, disallowed defendants' claim for a benefit credit for sick leave previously paid to plaintiff. Defendants appealed.

I.

[1] BE&K and St. Paul first contend that the Commission erred in concluding (1) that Mr. Lowe sustained an injury by accident arising out of and in the course of his employment with BE&K, (2) that Mr. Lowe's cervical spine condition was related to the 5 November 1990 injury, and (3) that Mr. Lowe is disabled. We disagree.

## LOWE v. BE&K CONSTRUCTION CO.

[121 N.C. App. 570 (1996)]

Under the provisions of N.C.G.S. § 97-86, the Industrial Commission is the fact finding body and findings of fact made by the Commission are conclusive on appeal if supported by competent evidence. *Hansel v. Sherman Textiles*, 304 N.C. 44, 49, 283 S.E.2d 101, 104 (1981). This is so even if there is evidence which would support a finding to the contrary. *Id.* Hence, on appeal, this Court is limited to two inquiries: (1) whether any competent evidence exists before the Commission to support its findings of fact; and (2) whether the findings of fact of the Commission justify its legal conclusions and decision. *Id.*

The record on appeal indicates that the Commission made the following relevant findings of fact:

. . . .

2. At the end of his shift on 5 November 1990, plaintiff noticed that water was leaking out of a flange . . . . As plaintiff was straining to tighten the flange, he suddenly experienced the onset of severe low back pain which radiated into his testicles and hips. When his supervisor, Mr. Harvey Brooks, came over a short time later, he reported the injury and indicated that he needed to leave. Plaintiff was visibly impaired when he left work that night.

3. Plaintiff was still in pain the next morning and was unable to report to work as scheduled, but he went in late that morning . . . . Plaintiff continued working until June 1991 thinking that the back and leg pain would resolve, but it grew worse instead. On 13 June 1991 plaintiff went to see Dr. Oak for treatment but then decided that he needed to see a specialist. He had a long history of back problems beginning with an injury in college and had under gone [sic] four operation [sic] to his lower back. Plaintiff decided that he should return to the doctor who had performed his last surgery, so he called the medical center in Birmingham, Alabama where it had been performed. Apparently, Dr. Griff R. Harsh, III was no longer in practice and plaintiff was given an appointment with Dr. W.S. Fisher, III.

4. Dr. Fisher examined plaintiff on 28 June 1991 and ordered an MRI. There were problems with the MRI and it could not be adequately read. Dr. Fisher was concerned that plaintiff had arachnoiditis based upon what could be seen on the MRI. Since plaintiff was reluctant to undergo a myleogram [sic], Dr. Fisher referred him to Dr. Sanford H. Vernick in Greenville for pain man-

agement. Dr. Vernick examined plaintiff on 4 September 1991 and ordered psychological evaluation and a functional capacity evaluation. Dr. Vernick subsequently released plaintiff to return to work with restrictions on 14 October 1991. On 10 November 1991 plaintiff was called and given a job in Lumberton where physical work would not be required. Plaintiff accepted the position and worked on that site until 14 December 1991 when the job was completed. He did not receive another work assignment, but apparently remained on the payroll until 31 January 1992 when he was laid off.

5. Because of his persistent symptoms, plaintiff went to Dr. Robert P. Singer, a neurosurgeon in Richmond, Virginia, on 23 March 1992 for evaluation of his condition. Dr. Singer determined that he could not adequately address the problems and referred plaintiff to Johns Hopkins Hospital. Plaintiff went there on 5 December 1992 and saw Dr. Marco Pappagallo. He still complained of low back pain and bilateral leg pain, but he had also developed neck pain and symptoms in his hands over the previous few months. Dr. Pappagallo reviewed the MRI which had been performed in July and ordered additional diagnostic tests. Since there was apparent disc herniation in plaintiff's cervical spine, he referred plaintiff to Dr. Allen Belzberg, a neurosurgeon. Dr. Belzberg began treating him on 28 October 1992 for the cervical spine problem and performed surgery at C-56 and C-57 in December 1992. Dr. Belzberg was of the opinion that the incident on 5 November 1990 could have aggravated plaintiff's pre-existing cervical spine condition.

6. Plaintiff was not treated for his lower back problems until 28 May 1993 when he was evaluated by Dr. Michael Tooke, an orthopaedic surgeon. He continued to experience persistent back pain which radiated into his groin as of that time. Dr. Tooke found evidence of spinal stenosis at T12-L1 and opined that plaintiff might benefit from surgery. However, he had not provided further treatment or follow-up care by the time his testimony was taken.

. . . .

10. As a result of this injury by accident, plaintiff was unable to work from 11 June 1991 through approximately 9 November 1991. During that time, he received sick leave compensation from his employer. Defendant-employer paid him his full salary until 11 September 1991 and then paid him sixty percent of his salary until

## LOWE v. BE&K CONSTRUCTION CO.

[121 N.C. App. 570 (1996)]

about 9 November 1991. Consequently, he was paid approximately $20,139.00 during his absence. After he returned to work, he received his regular salary until approximately 31 January 1992 when he was laid off. Plaintiff continued to be unable to perform his regular work duties after that date due to back and leg pain associated with this injury, but defendants did not pay him further sick leave or other compensation for his disability. However, plaintiff received a severance pay package unrelated to his disability.

11. Plaintiff continued to be unable to work as a result of his low back condition during the time he received treatment from Dr. Belzberg. He remained unable to work as of the date of the hearing and required further medical treatment for his work related condition.

Upon careful examination of the record, we find competent evidence to support the Commission's findings of fact. We likewise find that the findings of fact of the Commission justify its legal conclusions and decision. Based on the testimony of Mr. Lowe, Mr. Brooks, Mr. Scarborough, Dr. Belzberg, Dr. Tooke, Mr. Porter, and the stipulated medical records of Dr. Oak, there was substantial evidence to show (1) that Mr. Lowe sustained an injury by accident arising out of and in the course of his employment with BE&K, (2) that Mr. Lowe's cervical spine condition was related to the 5 November 1990 injury, and (3) that Mr. Lowe is disabled. We therefore affirm the Commission's Opinion and Award.

II.

[2] BE&K and St. Paul next contend that the Commission erred in failing to award defendants a credit of $20,139.00 for sick leave payments previously paid to Mr. Lowe. We agree.

N.C.G.S. § 97-42 provides in relevant part:

Any payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Industrial Commission be deducted from the amount to be paid as compensation.

Our Supreme Court held in *Foster v. Western-Electric Co.*, 320 N.C. 113, 115, 357 S.E.2d 670, 672 (1987) that where "defendant had

not accepted plaintiff's injury as compensable under workers' compensation at the time the payments were made, nor had there been a determination of compensability by the Industrial Commission . . . . ," the employer should be awarded a credit for these payments under N.C.G.S. § 97-42. On the other hand, in cases where it is stipulated that the employer's insurance carrier accepts the employee's claim as compensable under the Act after the injury occurred, *see Moretz v. Richards & Associates*, 316 N.C. 539, 342 S.E.2d 844 (1986), and when the employer stipulates that the employee had sustained an injury by accident arising out of and in the course of his employment, *see Ashe v. Barnes*, 255 N.C. 310, 121 S.E.2d 549 (1961), a credit will be disallowed under N.C.G.S. § 97-42.

The record on appeal indicates that BE&K and St. Paul neither stipulated that Mr. Lowe's injury was compensable under the Act nor that he had sustained an injury by accident arising out of and in the course of his employment. In *Foster*, our Supreme Court overturned this Court's affirmance of the Commission's denial of a credit under facts similar to the case at hand. *See* 320 N.C. at 115, 357 S.E.2d at 672. We recognize that N.C.G.S. § 97-42 appears to vest the awarding of credits within the discretion of the Commission. That section states in pertinent part that a credit *may* be allowed subject to the approval of the Commission. Notwithstanding our interpretation of this statute, we are bound by our Supreme Court's pronouncement in *Foster. Cf., Estes v. North Carolina State University*, 89 N.C. App. 55, 365 S.E.2d 160 (1988). We therefore find that the Commission erred in not awarding defendants a credit of $20,139.00 under N.C.G.S. § 97-42 for sick leave payments made to Mr. Lowe. Accordingly, we reverse this portion of the Opinion and Award.

Affirmed in part, Reversed in part.

Judges GREENE and McGEE concur.